WELLS FUND I and Wells Management Company, Inc., Plaintiffs–Appellants,

v.

The SHOE SHOW OF ROCKY MOUNT, INC., Goody's Family Clothing, Inc., and the Hutchens Company, Inc., Defendants–Appellants.

Court of Appeals of Tennessee,
Eastern Section.

May 21, 1993.

Application for Permission to Appeal
Denied by Supreme Court
Sept. 27, 1993.

David A. Lufkin, Knoxville, for Wells Fund I and Wells Management Co., Inc.

Lawrence P. Leibowitz, Knoxville, for Goody's.

Robert L. Crossley and Kelli L. Thompson, Knoxville, for Hutchens Co.

OPINION

GODDARD, Judge.

Wells Real Estate Fund I, landlord of The Shoe Show of Rocky Mount, Inc., and Goody's Family Clothing, Inc., sues them for breach of their lease, and also the Hutchens Company, Inc., for inducing Goody's to breach its lease.

After a full evidentiary hearing the Trial Court found in favor of Wells and awarded it a judgment of $2867 against Shoe Show, $96,408 [1] against Goody's, which included attorney fees and certain other costs, and $150,000 against Hutchens, which was triple the damage awarded against Goody's.

Shoe Show was apparently satisfied insofar as the judgment against it was concerned, or at least not sufficiently dissatisfied to appeal. However, Wells, Goody's and Hutchens have perfected appeals and raise the following issues:

*WELLS' ISSUES*

I. DID THE CHANCERY COURT ABUSE ITS DISCRETION IN AWARDING ONLY $96,408.00 IN TOTAL DAMAGES TO WELLS FOR GOODY'S BREACH OF ITS LEASE?

  a. DID THE CHANCERY COURT ABUSE ITS DISCRETION IN AWARDING ONLY $50,000.00 IN COMPENSA-

---

1. This may be a typographical error in that the various awards total $96,400, rather than $96,-408:

| | |
|---|---|
| Damages: | $50,000 |
| Attorney Fees: | 44,550 |
| Other costs | 1,850 |
| | $96,400 |

TORY DAMAGES TO WELLS FOR GOODY'S BREACH OF ITS LEASE?

   b. DID THE CHANCERY COURT ABUSE ITS DISCRETION IN DENYING WELLS' POST-TRIAL MOTION FOR ADDITIONAL ATTORNEY FEES FOR SERVICES RENDERED FROM DECEMBER 1, 1991 THROUGH JANUARY 16, 1992?

II. SHOULD THIS COURT INCREASE THE AWARD OF ATTORNEY FEES BY $14,487.00 TO COMPENSATE WELLS FOR THE COST OF LEGAL SERVICES RENDERED ON APPEAL AGAINST GOODY'S?

III. DID THE CHANCERY COURT ABUSE ITS DISCRETION IN AWARDING WELLS ONLY $150,000.00 AGAINST HUTCHENS FOR PROCURING THE BREACHES OF LEASES BY GOODY'S AND VARIOUS OTHER TENANTS?

### GOODY'S ISSUES

1. DID THE TRIAL COURT ERR IN AWARDING DAMAGES AGAINST GOODY'S FAMILY CLOTHING, INC. WHERE THE EVIDENCE CLEARLY ESTABLISHED THAT NO DAMAGES HAD OCCURRED AS A RESULT OF THE GOODY'S FAMILY CLOTHING, INC.'S ACTIONS.

2. DID THE TRIAL COURT ERR IN AWARDING ATTORNEY'S FEES WHERE:

   (a) NO PROOF WAS ENTERED AS TO THE AMOUNT OF ATTORNEY'S FEES;

   (b) THE CONTRACT PROVIDING FOR ATTORNEY'S FEES TO BE AWARDED ONLY FOR CURING A DEFAULT OR ENFORCING A PROVISION OF THE LEASE AND THE TRIAL COURT FOUND THAT THE AC-

TION WAS A "PUNITIVE ACTION FOR DAMAGES AND NOT ONE TO CURE A DEFAULT";

   (c) WHERE THE TRIAL COURT'S FINDINGS RAISE A CLEAR INFERENCE THAT THE "LEGAL FEES" BILLED WERE NEITHER ATTORNEY'S FEES NOR REASONABLE;

   (d) AND WHERE THE LEGAL FEES CLAIMED WERE GROSSLY OUT OF PROPORTION TO THE DAMAGES SUFFERED, IF ANY?

### HUTCHENS' ISSUES

I. DID HUTCHENS INTENTIONALLY AND WRONGFULLY INDUCE GOODY'S TO BREACH ITS LEASE WITH WELLS FUND EVEN THOUGH HUTCHENS HAD NO KNOWLEDGE OF THE TERMS OF THE LEASE WHICH GOODY'S BREACHED?

   Hutchens submits that the answer is "NO."

II. DID HUTCHENS CAUSE GOODY'S TO BREACH ITS LEASE WITH WELLS FUND?

   Hutchens submits that the answer is "NO."

After reviewing the record, the briefs of the parties and the well-reasoned memorandum opinion of the Chancellor, we conclude that as to Wells' issues 1(a) and 3, as to both of Goody's issues and as to Hutchens' issue 2, it is appropriate to affirm the Trial Court under Rule 10(a) of the Rules of this Court.[2]

We will now address the remaining issues. First, as to Wells' issue relative to additional attorney fees from December 1, 1991, through January 16, 1992, the Trial Court without comment denied the post-trial motion seeking such attorney fees. Whether it was because he thought his previous award

---

**2.** *Rule 10.* (a) *Affirmance Without Opinion.* The Court, with the concurrence of all judges participating in the case, may affirm the action of the trial court by order without rendering a formal opinion when an opinion would have no precedential value and one or more of the following circumstances exist and are dispositive of the appeal:

   (1) the Court concurs in the facts as found or as found by necessary implication by the trial court.

   (2) there is material evidence to support the verdict of the jury.

   (3) no reversible error of law appears.

   Such cases may be affirmed as follows: "Affirmed in accordance with Court of Appeals Rule 10(a)."

of attorney fees awarded was sufficient to cover any additional attorney fees incurred, or that the affidavit of counsel was not sufficiently definite to justify an additional award cannot be determined. We, however, conclude that the Trial Court's action would have been justified in either case, and this issue is found to be without merit.

■ As to Wells' second issue, we deem it appropriate that it recover attorney fees incident to this appeal, and rather than award the amount insisted upon by it, believe the better practice is to remand the case to the Trial Court for its determination after allowing both parties, if they so desire, to introduce proof on the question. We should point out in this regard that it is entitled only to those fees incurred in resisting the appeal of Goody's and Hutchens.

■ As to Hutchens' first issue, the proof shows that Wells' lease with Goody's expired on April 30, 1992, and some 30 months prior to the expiration date of its lease with Wells, Goody's moved to another shopping center owned by Hutchens less than one mile distant. In addition, the lease contained two other provisions which are not uncommon in shopping mall leases. The first is what is known in the trade as a use and occupancy provision, which required the tenant to keep the leased premises stocked in goods, as well as to be open during regular shopping hours. It also provided that the tenant would not relocate within five miles of the leased premises. Although Hutchens in effect continued to make the lease payments, including the highest percentage rent ever paid by Goody's during its occupancy, without question, the latter two provisions of the lease were breached.

Notwithstanding the breach, which the Chancellor found and we concur, was induced by Hutchens, it insists that the case of *TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169 (1987), is dispositive. In that case the plaintiff sued the defendant bank contending it had induced Tomlin to breach a contract which benefited TSC in the event Tomlin obtained financing below a certain percentage rate within a specified period.

Hutchens insists that a directed verdict in favor of the bank was sustained for the reason that the bank did not know the specific terms of the purchase agreement or its extension.

While we concede there is language in *Tomlin* which would support Hutchens' assertion, we perceive this as *dictum* because, as pointed out in Wells' brief, the purchase agreement and extension, of which the Bank was aware, does not contain any provision relative to the duty of Tomlin to seek a lower interest rate for financing the purchase. Instead, it was apparently a separate oral agreement between TSC and Tomlin, of which the Bank had no knowledge.

In addressing this point, Judge Highers, speaking for this Court, stated the following (743 S.W.2d at 173):

> The factual allegations contained in the plaintiff's complaint, and the evidence introduced at trial in support thereof establish only that Tomlin made representations to TSC that he would seek the lowest possible interest rate. Neither the Agreement nor the Extension contained a provision obligating Tomlin to obtain the lowest possible rate of interest. The Agreement provided that "in the event" Tomlin obtained financing at 15% or below, TSC would become entitled to a cash payment. The Extension provided only that "Tomlin agrees to use his best efforts . . . to obtain industrial development bond financing for the property." Thus even if FAB representatives had read the contracts word for word, they would not have learned of a duty such as TSC maintains existed. There is no evidence in the record, however, that FAB ever saw the contract.

■ We consequently conclude that where a party knows of a lease, as Hutchens in the present case undoubtedly did, he is on notice as to the terms of the agreement and has a duty to learn whether his actions will cause the lessee to breach his agreement. We recognize that in this case a representative of Hutchens did ask a representative of Goody's for a copy of the lease, but, amazingly enough, according to the proof, the lease was not recorded and Goody's could not locate a copy. However that may be, we hold that Hutchens may not close its eyes and ears and

734

thereafter claim a lack of knowledge when the lease could have been easily obtained from Wells.

In conclusion, we always appreciate counsel acceding to our request to abridge the record. However, in the present case we were dismayed to find that a separate abridged record was submitted by counsel for Wells Fund, Goody's and Hutchens. Rule 14 of this Court contemplates a single abridged record. In the present case we had three options. One, read the entire transcript, consisting of 966 pages; two, read each abridgement separately, resulting in a lack of continuity as to the testimony; or three, attempt to read all three in conjunction with each other, which would prove quite cumbersome. We chose the first option which, incidentally, resulted in our learning that page 618 of the transcript is missing. We assume this page is not significant as it is not included in any of the three abridgements.

For the foregoing reasons the Trial Court is affirmed and the cause remanded for further proceedings consistent with this opinion. Costs of appeal are adjudged one-third against Wells, one-third against Goody's and one-third against Hutchens.

SANDERS, P.J. (E.S.), and McMURRAY, J., concur.